## PITTSB. MELTING CO., LIM., v. T. M. REESE.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF ALLE-
GHENY COUNTY.

118   355
143   63
118   355
180   498

Argued November 7, 1887—Decided January 3, 1888.

1. Strangers dealing with a limited partnership organized under the act of June 2, 1874, P. L. 271, are bound by the limitations imposed upon the power of the individual members.
2. A contract of sale made by the chairman of the board of managers of such an association, without express authority from the board, or authority to be implied from a course of like sales made without objection, is not binding.
3. A contract for a sale by such an association to a purchaser, which will impose upon the association a liability for non-performance exceeding five hundred dollars, cannot be enforced unless in writing and signed by at least two managers as required by § 5 of said act.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 235 October Term 1887, Sup. Ct.; court below, No. 320 September Term 1886, C. P. No. 1.

On July 21, 1886, Thomas M. Reese issued a summons in case against the Pittsburgh Melting Co., Limited, an association organized under the limited partnership act of June 2, 1874, P. L. 271. The plea was non-assumpsit.

At the trial on April 9, 1887, the facts appeared: The defendant company was engaged in the business of rendering animal fats, and on July 12, 1886, had on hand six hundred tierces of oleomargarine oil. At a meeting of the board of managers on the morning of that day, Mr. Emil Winter being chairman of said board, the price was fixed at 6½ cents. Immediately after the meeting, the chairman verbally contracted to sell the entire lot on hand to Thomas H. Reese at that price. The purchaser at once prepared to receive it and sent his check for $13,260 in full payment, but, on account of some misunderstanding among the members of the board as to the quantity to be sold, delivery was refused. A proper tender of purchase

money was made before suit brought. Evidence was introduced that there was no local market for the oil at Pittsburgh, and that the market price at New York and Chicago was $8\frac{1}{2}$ cents.

The court, STOWE, P. J., charged the jury as follows:

The first question for you to determine is whether or not there was an actual sale and purchase of these 600 tierces of oil? If you make up your mind that there was, that Mr. Reese on the one side, and Mr. Winter acting as chairman of the defendant company on the other, got together and made a contract of bargain and sale, the next question is one of law, whether Winter had the right to make that contract so as to bind the defendant, and if under the instructions of the court you find he had, then there is left the question of damages only.

You have heard the testimony of the plaintiff and of Mr. Winter as to whether there was a contract. They both agree that after some preliminary negotiation they did actually make a contract for the sale and for the purchase of this oil. Reese swears he bought it, Winter swears he sold it; and if you believe that, so far as the actual contract was concerned, it is perfectly conclusive and beyond any question, assuming now that Winter had the authority to sell.

Upon the authority to sell you have had very considerable testimony, very much, none of which, in fact, under the law in the case as I hold it to be, amounts to anything. I hold as matter of law, that these gentlemen who compose the Pittsburgh Melting Company were partners, and that under the act under which they are incorporated, each one of the managers, and at all events the chairman, the head of the board, had a right to sell anything they had to sell to anybody that wanted to buy, without special authority from the board; and that the chairman had the right to buy anything, or to contract for anything that the whole board could contract for, subject to the limitation of the act of assembly, that is, where the purchase amounted over $500, there had to be a paper signed by two members of the partnership.

This is a new question, perhaps, but so far as I am concerned I have no doubt about it; at all events it is my duty to instruct you as though I had no doubt. . . . . .

That brings us to this case. As we instruct you, Mr. Winter had a right to sell this oil. He was chairman of the concern, and—to put it clearly and without question, apart from the evidence—we instruct you as matter of law, the very position he had as a member of this firm and as the executive head of it gave him a right to sell any oil they had, whether the whole stock in hand or not, even if there was an agreement between him and the other members of the firm that he should not sell for the price he did sell. If he did sell it to Reese without Reese having any knowledge or information, or reason to believe that any such restriction had been put on his powers, and Reese bought it in good faith, the contract is binding not only upon Winter, but on the defendant, and a breach of that contract either by him or the defendant makes the company liable for any damages sustained by reason of the breach.

This brings us to the points presented by the counsel for the defendant, which raise very nicely and very squarely this question, which, I presume, the Supreme Court will be eventually called upon to dispose of.

1. Under the law and evidence in this case the verdict should be for the defendant.

Answer: This is refused. It is based on the idea that there is not sufficient evidence to justify you in finding for the plaintiff. The matter is for you; and if you think the sale was made as claimed by the plaintiff, and made without any fraud or collusion on his part, or any knowledge on his part, that Winter—if there was any restriction put upon him—had a restriction imposed upon him as to selling, we say it was a good contract and binding on the defendant, and the plaintiff has a good right to recover. The amount of damage is, of course, for you.[1]

2. If the damages in this case exceed five hundred dollars, then the plaintiff cannot recover, because the contract of sale was not reduced to writing and signed by at least two managers.

Answer: This point is refused. We are unable to agree with the counsel for the defendant on this, and hold that the law does not apply in case of contract of sale. It applies, as

we understand it, to the purchases, something that involves the company in some liability. I do not understand the act as undertaking to restrict these partnerships in matters of sale.[2]

3. The sale made by Mr. Winter was not binding upon the association unless he had express authority from the board or other managers to make it, or unless he had implied authority from the fact that he had been making similar sales theretofore without objection. There is no evidence that he had such express authority, and the evidence as to implied authority is his own evidence, not supported by any other witness, but contradicted by all the other managers.

Answer: The latter part of that may be true or not. I do not exactly understand it so, but the point as a whole is refused; and, so as to give the defendant a perfectly clear and unmistakable ruling, I instruct you that under the act of assembly and the articles of association, Winter, being chairman of the board of managers, had authority to do business for the defendant, to sell its products in the market without any specific authority to that effect, and that in the absence of fraud or collusion between him and the purchaser, or knowledge on the part of the latter of want of authority to sell, a bona fide purchase by him from Winter was binding upon the company defendant.[3]

If you believe, in view of all the testimony in this case, that Reese and Winter got together, that Reese purchased this oil in good faith, not knowing there was any restriction on Winter selling it, if there was any, and the defendants have refused to comply with the contract, as there is no doubt they did, the plaintiff is entitled to damages, and the rule of the law is that he shall be made whole, that is to say, he is to recover from the defendants whatever the oil would have been worth, what he could have disposed of the oil for in Pittsburgh the day of the breach—the final breach—which was, I believe, on the 19th or 20th of July, 1886. [You take the markets in New York and Chicago if there was no local market here, and add the price of getting the oil to those points where there was a market. If you have the market price thoroughly established there, and by immediately shipping it the plaintiff could have

got it to a market and there sold it, the difference between that price and the price the plaintiff agreed to pay for it with the freight added, is the damage he has sustained.][4] I believe that is all I can say to you that will throw any light on the matter, so far as I have any right to suggest anything.

The verdict of the jury was in favor of the plaintiff for $3,447, and judgment being entered the defendant association took this writ assigning for error:

1-2. The answers to the defendant's points.[1 to 2]
3. The answer to defendant's point.[3]
4. The part of the charge embraced in [ ][4]

*Mr. W. B. Rodgers*, for the plaintiff in error:
The question is, was this contract a liability under § 5, act of June 2, 1874, P. L. 271?

1. Undoubtedly, the provision applies to contracts of purchase; why not to contracts of sale? Liability is, "responsibility; the state of one who is bound in law and justice to do something which may be enforced by action. This liability may arise from contracts, either express or implied, or in consequence of torts committed:" Bouvier. In a contract, whether of purchase or of sale, a liability is fixed the moment the contract is made.

2. The provisions of the statute are imperative, not merely directory: Alma Spinning Co., L. R, 16 Ch. D. 681; Kirk v. Bell, 16 A. & E., N. S., 290. Unless the individual members of a corporation are authorized so to do, they cannot bind it by any express promise, nor can corporate engagements be implied from their unauthorized and unsanctioned acts or declarations: Allegheny Co. Work-house v. Moore, 95 Pa. 408; Cope v. Railway Co., 3 Exch. 841; Homersham v. Water Works Co., 6 Exch. 137; D'Arey v. Railway Co., L. R. 2 Exch. 158; Turnpike Road, 5 Binn. 481; Commissioners v. Lecky, 6 S. & R. 166. The argumentum ab inconvenienti is of no weight, as there is no more inconvenience in requiring contracts for sale to be signed by two managers, than in requiring contracts of purchase to be so signed.

*Mr. W. F. McCook*, for the defendant in error:
The purpose of the association is to manufacture and sell

oil.   One manager can make a sale, and if there be a delivery, the contract need not be in writing and signed by two managers.   But if the association refuse to perform, then the contract, as is claimed, must be in writing and so signed.   Thus would the association be free and the purchaser bound, according to the caprice or advantage of the latter.   Herein is the distinction between contracts of purchase and contracts of sale by such an association.   A contract of purchase defines the liability and fixes its amount.   A purchaser from it can tell whether the contract must be in writing.   The liability meant by the law cannot mean a liability which may or may not exist. The law owes an equal or even greater duty to protect persons contracting with such associations, because if their contract rights are to be subject to contingencies largely controlled by the other party, they would not deal with them and the act would defeat its own purposes.   In acts of assembly, generality of expression is often to be restricted by regard to the subject matter in respect of which it has been used: Commonwealth v. Montrose Borough, 52 Pa. 391.

OPINION, MR. JUSTICE GREEN:

The defendant is a limited and not a general partnership. The powers of the members are subject to the restraints and limitations imposed by law, and these are operative as well against strangers dealing with the partnership as against the members themselves.   In a general way this was conceded by the learned court below; but, in describing the authority of Mr. Winter, who was chairman of the company, we think the court erred in attributing to him an authority he did not possess.   Thus, in the charge the learned judge said: " As we instruct you, Mr. Winter had a right to sell this oil.   He was chairman of the concern and—to put it clearly and without question apart from the evidence—we instruct you as matter of law, the very position he had as a member of this firm, and as the executive head of it gave him a right to sell any oil they had, whether the whole stock in hand or not, even if there was an agreement between him and the other members of the firm that he should not sell for the price he did sell."   In answering the third point of the defendant the same idea was still more strongly expressed.   The judge then said: " I instruct

you that under the act of assembly and the articles of association, Winter being chairman of the board of managers, had authority to do business for the defendant, to sell its products in the market without any specific authority to that effect." The point requested an instruction that the sale made by Winter was not binding upon the association unless he had express authority from the managers, or implied authority from the fact that he had been making similar sales without objection; that there was no evidence of express authority, and as to the implied authority there was no evidence but his own, and that was contradicted by the other managers. The answer simply ignored every other consideration than that of a general authority, which it declared to exist without any specific authority, and without regard to the action of the managers. Practically this amounts to an ascription to one of the several partners, of all the power which may be exercised by an ordinary general partner.

The validity of the limited partnership in the present case has not been impeached or even questioned. We assume it to be entirely legitimate and therefore subject to the operation of the law relating to limited partnerships. Under that law the individual members do not have the authority of general partners. The powers of the association are to be exercised by a board of managers and not by each of the members. Other limitations are imposed not necessary to be now considered, but it is perfectly certain that the general authority of an ordinary partnership does not exist in the individual members. Strangers dealing with a limited partnership, being supposed to know the law, are bound by the limitations imposed upon the members, and cannot have the benefit of those inferences which flow from a relation of general partnership merely. We think the third point of the defendant should have been affirmed as it stood, and if it was true that the board of managers had on the 12th of July, 1886, refused to make the sale to the plaintiff at $6\frac{1}{2}$ cents, the jury should have been instructed that the sale made by Winter was not binding upon the defendant. These views require a reversal of the judgment upon the third assignment of error.

We are also of opinion that both the plaintiff and the defendant are bound by the restriction of liability in any case

for more than five hundred dollars unless reduced to writing and signed by at least two managers. The term "liability" expresses in the broadest and most comprehensive manner any form of legal obligation, certainly all such as are measured by money values. A purchase for more than five hundred dollars would undoubtedly be a liability prohibited. Why not a sale? The purchase imposes an obligation to receive a commodity and pay for it, and if this obligation is not discharged by performance, a liability to pay damages for its breach ensues. A sale imposes an obligation to deliver a commodity and receive money for it, and if not discharged a liability to respond in damages for its breach results. We can see no essential difference between these two different species of liabilities, in construing a legislative enactment such as this, the manifest purpose of which is to protect the association and its members from all obligations not sanctioned in the manner especially directed. This view requires a reversal on the first and second assignments.

Judgment reversed.